**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| CHARLOTTE P. DAVIS a/k/a )<br>CHARLOTTE POOLE DAVIS, )<br>  )<br>   Plaintiff )<br>  )<br>       v. )<br>  )<br>OSBERT POTTER, Former Lt. )<br>Governor of the Virgin Islands, )<br>TREGENZA ROACH, Lt. Governor )<br>of the Virgin Islands, ALBERT BRYAN, )<br>JR., Governor of the Virgin Islands, )<br>GOVERNMENT OF THE VIRGIN )<br>ISLANDS, )<br>  )<br>   Defendants. )<br>_____) | Civil Action No. 2022-0062 |

**Appearances:**
**Charlotte P. Davis,** *Pro Se*
St. Croix, U.S.V.I.

**Ariel Marie Smith Francois, Esq.**
St. Thomas, U.S.V.I.
**Eric S. Chancellor, Esq.**
St. Croix, U.S.V.I.
**Venetia H. Velazquez, Esq.**
St. Croix, U.S.V.I.
   *For Defendants*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on the Report and Recommendation ("R&R") submitted by Magistrate Judge Emile A. Henderson III. (Dkt. No. 35). In his R&R, Magistrate Judge Henderson recommends that Plaintiff Charlotte P. Davis' ("Plaintiff") Amended Motion for Preliminary Injunction (Dkt. No. 16) be denied and Plaintiff's earlier-filed Motion for Preliminary Injunction (Dkt. No. 7) be denied as moot. Plaintiff filed an objection to the R&R (Dkt. No. 38),

and Defendants filed an opposition to Plaintiff's objection (Dkt. No. 42). For the reasons that follow, the Court will adopt Magistrate Judge Henderson's R&R as modified herein and will deny Plaintiff's Motions.

## I. BACKGROUND

On December 2, 2022, Plaintiff initiated this action against Defendants (Dkt. No. 1), and moved for a preliminary injunction (Dkt. No. 7).[1] Plaintiff subsequently filed an Amended Complaint (Dkt. No. 11) and an Amended Motion for a Preliminary Injunction (Dkt. No. 16).

According to the allegations in the Amended Complaint, on June 5, 2012, Plaintiff purchased Plot. No. 44 Lowry Hill, Eastend "A" Quarter ("the Property")—consisting of .533 acres—for $18,100 at a public tax auction sale conducted by the Lieutenant ("Lt.") Governor's Tax Collection Office. (Dkt. No. 11 ¶ 12). The Property was sold for nonpayment of delinquent property taxes by the previous owners. *Id.* On July 9, 2013, the Lt. Governor's Office issued a Certificate of Purchase, which purports to convey the deed to the Property to Plaintiff. (Dkt. No. 11-1). The Certificate of Purchase notes, *inter alia*, that, once recorded, it would vest title to the Property in Plaintiff, free from all mortgages, liens, or other encumbrances. *Id.*

On July 24, 2015, the Lt. Governor's Office issued a "Notice of Cancellation of Tax Auction Sale" ("Notice of Cancellation"), purporting to void a January 18, 2012 tax auction sale as well as Plaintiff's title to the Property. (Dkt. No. 11-2). On October 27, 2015, Plaintiff wrote to former Lt. Governor Osbert Potter, asserting that, because she did not purchase the Property at the

---

[1] Magistrate Judge Henderson previously issued an R&R dated December 5, 2022 recommending that Plaintiff's original Complaint (Dkt. No. 1) be dismissed and that Plaintiff's original Motion for a Preliminary Injunction (Dkt. No. 7) be denied as moot. (Dkt. No. 9). As (1) Plaintiff has filed an Amended Complaint and (2) Magistrate Judge Henderson's subsequent R&R similarly recommends that Plaintiff's original Motion for a Preliminary Injunction be denied as moot, the Court will reject Magistrate Judge's Henderson's original R&R as moot.

2

January 18, 2012 tax auction sale, the Notice of Cancellation was "defective." (Dkt. No. 11-3). According to Plaintiff, she never received a response to her letter or to the numerous telephone calls that she placed to the Lt. Governor's Office regarding the matter. (Dkt. No. 11 ¶ 19). Further, Plaintiff asserts that she never received a notice cancelling the June 5, 2012 tax auction sale, at which she had purchased the Property. *Id.* ¶ 17.

Plaintiff alleges that, in August 2021, she learned of the Lt. Governor's Property Tax Delinquency List. *Id.* ¶ 20. This list identified Plaintiff as the owner of the Property and indicated that she owed $620 in property taxes. *Id.* ¶ 21; *see also* (Dkt. No. 11-4). Plaintiff paid the outstanding property taxes—totaling $831.77—on September 28, 2021. (Dkt. No. 11 ¶ 22); *see also* (Dkt. No. 11-5). The Lt. Governor's Office then issued Plaintiff a Real Property Tax Clearance Letter on October 1, 2021, again identifying her as the owner of the Property. (Dkt. No. 11 ¶ 23); *see also* (Dkt. No. 11-6).

On or about July 18, 2022, Plaintiff submitted a document to the Cadastral Division of the Lt. Governor's Office for recording against the Property, together with the Tax Clearance Letter. (Dkt. No. 11 ¶ 24). The document was returned to Plaintiff, requiring her to verify her ownership of the Property with the Office of the Recorder of Deeds ("ORD"). *Id.* When she sought this verification, she learned that the Property was recorded in the name of the previous owners. *Id.* ¶ 25. Such ownership was evidenced by a Special Deed for Legally Deficient Auction ("Special Deed"), dated June 21, 2017 and signed by former Lt. Governor Osbert Potter. *Id.*; *see also* (Dkt. No. 11-7). Plaintiff alleges that, despite the Special Deed, Defendants have retained her initial purchase price of $18,100. (Dkt. No. 11 ¶ 28).

Plaintiff maintains that 33 V.I.C. § 2549(a)(4)—which governs the penalties for improperly conducted tax auction sales—is "overly broad and violates the 14th Amendment of the United

3

States Constitution" by allowing the Lt. Governor to "void lawfully issued Certificates of Purchase without affording the purchaser notice and due process of law." *Id.* ¶ 10. By applying this statute to convey the Special Deed, Plaintiff argues that Defendants' actions were arbitrary, capricious, discriminatory and constituted a taking of Plaintiff's real property without due process, also in violation of the Fourteenth Amendment. *Id.* ¶ 30. Plaintiff further contends that the Special Deed itself is a defective document, as it fails to conform to the local statutory requirements for a deed. *Id.* ¶¶ 26-27.

Accordingly, in the Amended Complaint, Plaintiff seeks three forms of relief. First, she seeks a declaratory judgment regarding the rights, title and ownership of the Property. *Id.* at 13. Second, she seeks a "Preliminary/Permanent injunction" directing Defendants to remove the Special Deed from ORD's records as well as any other encumbrances relating to the tax auction sale where Plaintiff purchased the Property. *Id.* Third, she seeks damages from Defendants on the grounds of Slander of Title. *Id.*

On February 3, 2023, Plaintiff filed an Amended Motion for a Preliminary Injunction. (Dkt. No. 16). In it, she re-asserts her request for a preliminary injunction directing Defendants to remove the Special Deed from ORD's records as well as any other encumbrances relating to the tax auction sale where Plaintiff purchased the Property. *Id.* at 1-2. Plaintiff argues that she has and will suffer irreparable harm, as she has plans for the development of this "unique" Property that she will be unable to continue until the cloud over the title is removed. *Id.* ¶ 1. Plaintiff maintains that a refund of the purchase price would be an inadequate remedy in this matter, as a refund could not compensate for the appreciation in the monetary value of the Property since Plaintiff's purchase nor the intrinsic value of the Property to Plaintiff. *Id.* ¶ 2. Plaintiff also asserts that the threatened injury to her far outweighs any injury to Defendants, who she argues have no investment or legal

4

interest in the Property. *Id.* ¶ 3. Further, Plaintiff contends that there is a strong likelihood that she will prevail on the merits of this action, in light of the fact that the documents purporting to void her purchase of the Property are "defective." *Id.* ¶ 4. Defendants did not file an opposition to Plaintiff's Motion.

On July 7, 2023, Magistrate Judge Henderson issued the R&R recommending that Plaintiff's motions be denied. (Dkt. No. 35). As a preliminary matter, the Magistrate Judge found that Plaintiff was seeking a mandatory injunction because she sought to alter the status quo between the parties. *Id.* at 8. The Magistrate Judge also found that, based on a liberal reading of the Amended Complaint, Plaintiff "attempted to assert constitutional claim(s) under 42 U.S.C. § 1983." *Id.* at 9. As such, the Magistrate Judge found that Plaintiff invoked federal question jurisdiction. *Id.* at 9-10.

The Magistrate Judge did not make a finding as to whether Plaintiff was likely to succeed on the merits. *Id.* at 10-11. Nonetheless, he challenged Plaintiff's legal contentions as "conclusory" and without any supporting case law or factual development. *Id.* at 10. The Magistrate Judge further deemed it "unclear" as to whether Plaintiff may have run afoul of the two-year statute of limitations for Section 1983 claims. *Id.*

Finally, even assuming that Plaintiff had established a strong likelihood of success on the merits, the Magistrate Judge found that Plaintiff's Motion should be denied because she failed to establish irreparable harm. *Id.* at 10-11. In support of this finding, the Magistrate Judge asserted that any "harm to Davis's ownership interests happened years ago" and that Plaintiff had merely offered "conclusory statements predicated on the truism that all property is unique" rather than alleging facts that "this particular Property was integral to her family's future plans." *Id.* at 12-13. As such, the Magistrate Judge recommended that the Court deny Plaintiff's Amended Motion for

5

a Preliminary Injunction (Dkt. No. 16), and deny as moot Plaintiff's initial Motion for a Preliminary Injunction (Dkt. No. 7).

On July 21, 2023, Plaintiff filed an Objection to the R&R. (Dkt. No. 38). First, Plaintiff asserts that the facts as stated in the R&R are uncontested facts. *Id.* at 1-2. Second, Plaintiff asserts that she properly invoked federal question jurisdiction in her Amended Complaint, based on alleged violations of her due process rights under the Fourteenth Amendment. *Id.* at 2. Third, Plaintiff objects to Magistrate Judge Henderson's finding on the preliminary issue that she sought a mandatory injunction, instead characterizing different aspects of the injunction she seeks as both mandatory and prohibitory. *Id.* at 2-3. Fourth, Plaintiff objects to Magistrate Judge Henderson's finding that she is unlikely to succeed on the merits. *Id.* at 4. Fifth, Plaintiff objects to Magistrate Judge Henderson's finding that she is not suffering irreparable harm. *Id.* at 8. Lastly, although Magistrate Judge Henderson's R&R did not reach the balance of equities or public interest analysis, Plaintiff asserts that the balance of equities weighs in her favor and that it is "in the public's interest to protect an innocent purchaser of real property whenever the circumstances allow." *Id.* at 11.

On August 9, 2023, Defendants filed an Opposition to Plaintiff's Objection to the R&R, (Dkt. No. 42), advocating that the Court adopt the R&R. Defendants primarily argue that Plaintiff has not met the threshold requirements for injunctive relief.[2] *Id.* at 4. As such, Defendants agree with Magistrate Judge Henderson's suggestion that Plaintiff is not likely to succeed on the merits, and further agree with the Magistrate Judge that Plaintiff has failed to demonstrate that she will suffer irreparable harm without injunctive relief. *Id.* at 4-6.

---

[2] Defendants also assert that the Magistrate Judge did not make findings of fact, thus challenging Plaintiff's characterization of the facts stated in the R&R as "uncontested facts." (Dkt. No 42 at 3).

## II. STANDARD OF REVIEW

A party may make "specific written objections" to a magistrate judge's Report and Recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); LRCi 72.3. When reviewing an R&R, a district judge must review de novo "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Where the parties do not properly object to a magistrate judge's report and recommendation, there is no requirement that a district court review the report and recommendation before accepting it. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); *Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, No. CV 15--0041, 2023 WL 6388015, at *3 (D.V.I. Sept. 30, 2023) (citing *Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011)). Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is to afford some level of review to dispositive legal issues raised by the report." *Broomall v. Dist. Att'y of Cnty. of Delaware*, No. 2:22-CV-1943, 2024 WL 1163542, *1 n.1 (E.D. Pa. Mar. 18, 2024) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x at 153 ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate.") (internal quotation omitted).

Accordingly, a district judge reviews those portions of the magistrate judge's report and recommendation to which parties have not objected under the "plain error" standard of review. *See Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) (holding that the failure to file objections

to a portion of a magistrate judge's report and recommendation waived the party's right to *de novo* review and the scope of review was to be "conducted under the far more deferential standard of 'plain error,'"); *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). "Under this standard, the court reviews the magistrate judge's report and recommendation for error that is 'clear or obvious.'" *Bell v. Gov't of United States Virgin Islands*, No. CV 2018-0022, 2020 WL 487214, at *1 (D.V.I. Jan. 30, 2020) (citation omitted); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that "plain error" means clear or obvious, and it must be prejudicial, in that "[i]t must have affected the outcome of the district court proceedings").

Plaintiff timely objected to the Magistrate Judge's finding that she sought a mandatory injunction and the Magistrate Judge's recommendation that her preliminary injunction be denied. *See* (Dkt. No. 38). As such, the Court will review these issues *de novo*. Neither party filed an objection to the Magistrate Judge's finding that this Court has federal question jurisdiction,[3] and the Court will therefore review this issue under the "plain error" standard.

### III.    DISCUSSION

#### A.  Subject Matter Jurisdiction

"A federal court may 'raise sua sponte subject-matter jurisdiction concerns' because 'courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt.'" *Greene v. Sloane*, 783 F. App'x 108, 110 n.2 (3d Cir. 2019) (quoting *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003)). Under 28 U.S.C. § 1331, a district court "has federal-question jurisdiction in a case where a plaintiff makes a nonfrivolous allegation that he or she is

---

[3] While Plaintiff addressed the Magistrate Judge's subject matter jurisdiction analysis in her Objection, she appeared to agree with the finding that the Court has federal question jurisdiction over the dispute. (Dkt. No. 38 at 2). The Government did not raise an objection to this finding. (Dkt. No. 42).

entitled to relief under the U.S. Constitution or a federal statute." *Bizzarro v. First Nat'l Bank*, 804 F. App'x 190, 190 (3d Cir. 2020).

Here, Plaintiff's Amended Complaint states that "this Court has jurisdiction of this matter pursuant to . . . the 14th Amendment of the United States Constitution for the deprivation of Plaintiff's due process rights . . . ." (Dkt. No. 11 ¶ 9). Plaintiff also asserts that 33 V.I.C. § 2549(a)(4) "is overly broad and violates the 14th amendment of the United States Constitution ...." *Id.* ¶ 10. Further, although—as the Magistrate Judge observed—Plaintiff did not cite to 42 U.S.C. § 1983, constitutional claims against government officials—such as Plaintiff's—are brought pursuant to this federal statute. Thus, Plaintiff has pleaded allegations sufficient to invoke federal question jurisdiction. The Court therefore finds no plain error in the Magistrate Judge's conclusion that federal question jurisdiction exists here.

## B. Preliminary Injunction

### 1. Injunction Legal Standards

"Preliminary injunctions provide a mechanism through which courts may enjoin a party either to perform a particular act or to refrain from performing the same during the pendency of litigation." *Boynes v. Limetree Bay Ventures, LLC*, No. CV 2021-0253, 2023 WL 3166603, at *3 (D.V.I. Apr. 28, 2023) (citing *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982)). Notably, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, (2008).

"A plaintiff seeking preliminary relief must show that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Beberman v. United States Dep't of State*, 675 F. App'x 131, 133 (3d Cir. 2017) (quoting *Ferring Pharms., Inc. v.*

9

*Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)). Movants seeking a mandatory injunction—injunctions that would change the status quo—bear a "'particularly heavy' burden . . . requiring them to show a substantial likelihood of success on the merits and that their 'right to relief [is] indisputably clear.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994); *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)); *see also C.G. by & through P.G. v. Saucon Valley Sch. Dist.*, 571 F. Supp. 3d 430, 438-39 (E.D. Pa. 2021) (explaining that mandatory injunctions seek to alter the status quo by commanding some positive action).

Likelihood of success on the merits and irreparable harm are "gateway factors" that the movant must establish at the outset. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102-103 (3d Cir. 2022); *see also Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) ("The first two factors are prerequisites for a movant to prevail."); *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020) ("[T]he moving party must establish the first two factors."). Thus, a movant's failure to establish either of these factors ends the analysis; injunctive relief will not be available. *See Goldopp Energy, LLC v. Stewart*, No. 5:23-CV-02609, 2023 WL 4471694, at *2 (E.D. Pa. July 11, 2023) ("District courts need not assess the final two factors unless the moving party is able to establish the first two factors.")

If these two gateway factors are satisfied, a court then determines whether "all four factors, taken together, balance in favor of granting the requested preliminary relief." *Greater Philadelphia*, 949 F.3d at 133. However, "[t]he burden is on Plaintiffs to 'establish every element in [their] favor, or the grant of a preliminary injunction is inappropriate.'" *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 363 (D.N.J. 2020) (quoting *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005)).

10

### 2. Irreparable Harm

A preliminary injunction "must protect a plaintiff from the cause of irreparable harm and nothing more." *I.M. Wilson, Inc. v. Grichko*, No. 18-CV-05194, 2019 WL 5394113, at *4 (E.D. Pa. Oct. 22, 2019). To establish irreparable harm, a plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Beberman*, 675 F. App'x at 134 (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)). To satisfy this gateway factor, a movant must show a "presently existing actual threat" that is of such "a peculiar nature, so that compensation in money cannot atone for it." *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *5 (3d Cir. Aug. 5, 2022) (quoting *Acierno*, 40 F.3d at 653). "This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000).

"[T]he taking of real property can be adequately remedied by monetary compensation," and the mere existence of an "intangible personal connection to property does not render [such taking] an irreparable injury." *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) (finding no irreparable injury to the plaintiffs from the government's condemnation of their property); *see also Goadby v. Phila. Elec. Co.*, 639 F.2d 117, 122–23 (3d Cir. 1981) (reversing a district court's finding of irreparable harm to plaintiff after the government constructed a power line on his property).

Thus, outside of any intangible personal connections, property rights must have a "unique nature" to support a claim for irreparable harm. *See Moses v. Lake*, No. 3:22-CV-0063, 2023 WL 4546242, at *9-10 (D.V.I. July 14, 2023) (finding that the disputed property did not have a "unique nature" despite the existence of fruit trees on the property that had been planted during the

11

plaintiffs' childhoods); *Levine v. Fin. Freedom*, No. CV184127, 2018 WL 4688338, at *3 (D.N.J. Sept. 28, 2018) (finding the plaintiff's unsupported assertion that the disputed property was unique did not provide a sufficient basis for concluding that the property had a unique nature); *see also Wilkerson v. Wilson*, No. 19-CV-236, 2019 WL 1522337, at *1 n.1 (D.N.J. Feb. 14, 2019) (explaining that the general rule is that the loss of real property does not constitute an irreparable injury and that the "only exception recognized in the Third Circuit is when mineral rights associated with the property are at issue."); *cf. Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255-56 (3d Cir. 2011), *as amended* (Mar. 7, 2012) (finding that a loss of property rights constituted irreparable harm because the "unique nature" of the mineral rights at stake in the litigation meant that their loss by the movants would "probably cause [the movants] to shut down or go bankrupt . . . .").

Here, Plaintiff has asserted no facts to suggest that the Property has a unique nature. Plaintiff argues that she will suffer harms such as: (i) the loss of the right to peacefully enjoy uninterrupted title and ownership of the Property; (ii) an inability to continue the design, development & construction of the Property; (iii) an inability to use the Property as collateral or security; and (iv) an inability to make any further conveyances of the Property. (Dkt. No. 38 at 8-10). But these are routine harms associated with the loss of property rights, none of which suggest that the Property has some unique nature that will render the lack or loss of ownership an irreparable harm. *See Levine*, 2018 WL 4688338, at *3 (rejecting the argument that the routine harms associated with the loss of property rights—such as the loss of possession of property—could support a finding of irreparable harm).

Plaintiff also asserts that she and her children have expended substantial money, time, energy, and labor developing the Property from wilderness to accommodate Plaintiff's plans and

12

needs, and further, that the Property is situated in an area and location which cannot be duplicated. (Dkt. No. 38 at 8-10). Again, this does not make the Property unique. The plaintiffs in *Moses* had possessed and used the disputed land—which bordered their property and could not be replaced—for more than 30 years. *Moses*, 2023 WL 4546242 at *1. Nonetheless, this was not deemed sufficient to give the property a unique status. Moreover, Plaintiff's efforts here in developing the Property fare no better in that the loss of her money, time, energy and labor resulting from Defendants' alleged unlawful transfer of the Property can be compensated by monetary damages if Plaintiff is ultimately found to be the rightful owner of the Property. Further, in contending that the Property is in such an area and location that it cannot be duplicated, Plaintiff's argument is less compelling than in *Moses* where the land at issue bordered the plaintiffs' property. Because Plaintiff has failed to establish that the Property is unique such that its loss could not be compensated by monetary damages, she has not shown that she would suffer irreparable harm in the absence of an injunction.

In the face of the Property's lack of a unique nature, Plaintiff argues that all property is inherently unique such that any interference with a real property interest necessarily constitutes irreparable harm. (Dkt. No. 38 at 10). But this is not the law. *See KP First Ave., L.P. v. Prentiss Properties Acquisition Partners, L.P.,* No. CIV. A. 01-1396, 2001 WL 438416, at *4 (E.D. Pa. Apr. 26, 2001) ("A number of cases suggest that there is no such *per se* rule of irreparable harm in real-property-related cases."); *Acierno*, 40 F.3d at 655 (reversing a district court's finding of irreparable harm where the plaintiff alleged an injury to real property, after finding that monetary damages could compensate for such an injury); *Hynoski* 485 F. App'x at 563 (finding no irreparable harm when the plaintiff alleged a loss of real property interests); *Goadby*, 639 F.2d at 122-23 (same); *see also 7-Eleven, Inc. v. Sodhi*, No. CV133715, 2016 WL 541135, at *6 n.10 (D.N.J. Feb.

13

9, 2016), *order amended on denial of reconsideration*, No. CV133715, 2016 WL 10572643 (D.N.J. Apr. 1, 2016) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-94 (2006)) (explaining that the Court in *eBay* had "explicitly dispelled" the presumption of irreparable harm in the context of real property rights). When, as here, harm to a real property interest can be compensated by monetary damages, it is not an irreparable harm.

A movant must make a showing of irreparable harm to receive a preliminary injunction. *See Goadby*, 639 F.2d at 122 (describing irreparable harm as "the sine qua non" of any preliminary injunction"); *Exec. Home Care Franchising LLC v. Marshall Health Corp.*, 642 F. App'x 181, 183 (3d Cir. 2016) (affirming a district court's refusal to grant a preliminary injunction solely on the basis of the movant's failure to demonstrate irreparable harm); *see also Goldopp*, 2023 WL 4471694, at *2 (finding the plaintiff had not demonstrated irreparable harm and denying preliminary injunctive relief without further analysis); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5407748, at *6 n.5 (W.D. Pa. Sept. 8, 2020) (explaining that its preliminary injunction analysis is limited to irreparable harm "[b]ecause Plaintiffs' failure to establish irreparable harm is dispositive" to their motion); *B.P.C. v. Temple Univ.*, No. CIV.A. 13-7595, 2014 WL 4632462, at *5 n.4 (E.D. Pa. Sept. 16, 2014) (explaining that "irreparable harm must always be present for an injunction to issue," and concluding that, "[b]ecause of the [movant's] failure to establish irreparable harm, the other factors (likelihood of success, balance of harms and public interest) need not be addressed.").

Plaintiff has failed to meet her burden of demonstrating irreparable harm resulting from Defendants' alleged interference with her property rights. Accordingly, the Court will deny her motion for a preliminary injunction.[4]

## IV.    CONCLUSION

In view of the foregoing, the Court will adopt Magistrate Judge Henderson's R&R as modified herein and deny Plaintiff's Amended Motion for a Preliminary Injunction (Dkt. No. 16). The Court will also deny as moot Plaintiff's initial Motion for a Preliminary Injunction (Dkt. No. 7) and reject as moot Magistrate Judge Henderson's R&R dated December 5, 2022 (Dkt. No. 9). An appropriate Order accompanies this Memorandum Opinion.

Date:   March 30, 2024                                                _____/s/_____
                                                                      WILMA A. LEWIS
                                                                      District Judge

---

[4] Magistrate Judge Henderson's R&R also (1) made a finding that Plaintiff sought a mandatory injunction, as opposed to a prohibitory injunction, and (2) suggested, without making an express finding, that Plaintiff's claim was unlikely to succeed on the merits. The Court has found that Plaintiff failed to establish irreparable harm. Because irreparable harm is an essential element of *any* request for preliminary injunctive relief—whether mandatory or prohibitory—and the absence of irreparable harm is sufficient by itself to deny such relief, the Court does not need to decide whether the relief sought is prohibitory or mandatory or whether Plaintiff is likely to succeed on the merits. Thus, the Court does not need to reach and therefore does not adopt either of the two above-mentioned portions of the R&R.